# DAVID GIBSON LINKEY, JR. *v.* STATE OF MARYLAND

[No. 1403, September Term, 1979.]

*Decided July 14, 1980.*

The cause was argued before MELVIN and WILNER, JJ., and J. LOUIS BOUBLITZ, Associate Judge of the District Court of Maryland for District 11, specially assigned.

*Clarence W. Sharp, Assigned Public Defender,* for appellant.

*Kathleen M. Sweeney, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Donaldson C. Cole, Jr., State's Attorney for Cecil County,* and *Paul S. Podolak, Assistant State's Attorney for Cecil County,* on the brief, for appellee.

WILNER, J., delivered the opinion of the Court.

On March 16, 1979, appellant was indicted for the first degree murder of one Burl Daniel Howell, Jr. On June 11, 1979, pursuant to Maryland Rule 736, he moved to suppress (1) in general, all incriminating evidence against him, on the theory that it was obtained as a result of either an illegal arrest or an unlawful search and seizure, and (2) in particular, all statements taken from him by the police, on the premise that they were taken in violation of his State and Federal Constitutional rights.

After an evidentiary hearing, the Circuit Court for Cecil County, on July 31, 1979, denied the suppression motion, except as to certain statements made on January 30, 1979, which it suppressed. All other statements were held to be given voluntarily and in compliance with the requirements of *Miranda v. Arizona,* 384 U.S. 436 (1966), and the other evidence challenged by appellant was held to have been properly obtained.

At some point prior to the commencement of trial on August 9, 1979, the parties (and the court) entered into what they considered to be a "plea bargain." What this involved, essentially, was (1) appellant maintaining his plea of not guilty, (2) the State proceeding upon an "agreed statement of facts" on a charge of *second* degree murder and agreeing not to prosecute the heavier charge of first degree murder, and (3) the court agreeing (subject to considering a presentence investigation report) to a sentence not to exceed 30 years with the last 12 years suspended, thus involving a maximum period of incarceration of 18 years. The first part of this was made manifest when, at the commencement of trial, the State's Attorney announced:

> "And by agreement, we are going to proceed on an agreed statement of facts. And, basically, Your Honor, with regard to the charge that on or about January 16, 1979, the Defendant, David Gibson Linkey, Jr., proceeded to the home of Burl Howell, Jr., located on Dogwood Road, Cecil County,

Maryland, where an argument ensued over Buella Ruth Thompson. Miss Thompson was living at the residence of Burl Howell, Jr. at that time. The Defendant accused Mr. Howell with making improper advances toward Miss Thompson.

The Defendant grabbed a knife from the kitchen and stabbed Mr. Howell several times, which caused his death. This was done with malice, but without premeditation, deliberation, and without justification, excuse or mitigating circumstances."

This statement was stipulated to by appellant. No other evidence was offered; and no other statements bearing on the facts of the case or on appellant's guilt were made. Solely upon the stipulation quoted above, the court pronounced appellant guilty. On November 13, 1979, after reviewing a presentence investigation report, the court abided by its part of the agreement and sentenced appellant to 30 years imprisonment, with the last 12 years suspended.

In this appeal, appellant complains only about the denial of his suppression motion. With respect to the various statements he made to the police, he claims that they were coercively obtained and were therefore "involuntary and inadmissible." The physical evidence obtained by the police from appellant's girlfriend — certain knives, clothing, and a letter — he says was "illegally seized." The threshold, and decisive, question before us, however, is whether these issues have been preserved for appellate review. We think they have not.

The reason for this becomes clear when we look at what transpired at appellant's trial. His conviction rested solely upon an agreed statement of ultimate facts. He stipulated that he had stabbed Howell to death and that he had done so with malice and without premeditation, deliberation, justification, excuse, or mitigating circumstance. All the court was asked to do was to determine whether, as a matter of law, those facts sufficed to constitute second degree murder. See Barnes v. State, 31 Md. App. 25, 35 (1976); Gray v. State, 38 Md. App. 343 (1977), cert. den. 282 Md. 732 (1978).

In light of this agreement as to ultimate facts, it was, of course, unnecessary to offer, or even refer to, any more particular evidence tending to prove those facts. For that reason, we presume, no mention was made of appellant's statements to the police or of the items obtained from his girlfriend. The "evidence" challenged by appellant was never used as evidence and, from the record before us, was never considered by the court in determining his guilt.

The sanction for obtaining incriminating evidence by unlawful means — in contravention of the Fourth and Fifth Amendments and the prophylactic procedures designed to preserve and enforce them — is to render the tainted items impotent by declaring them unusable to prove guilt. With certain limited exceptions, neither they nor the fruit born from them may be admitted into evidence or considered by the trier of fact in determining the guilt of the accused.

This is a heavy, but not an unlimited, sanction. It does not require an automatic release of the accused or dismissal of the charge against him; it does not avert his trial; it does not prevent the admission and consideration of independent untainted evidence, otherwise admissible; and it does not preclude a verdict of guilty based upon a sufficient quantity of such independent untainted evidence. All that the exclusionary rule does is to keep out of the trial the specific evidence (and the fruits of it) that was improperly obtained. *See United States v. Crews,* 445 U.S. 463, 100 S. Ct. 1244, 1251 (1980). If such evidence is never admitted (or improperly offered) at trial, it is difficult to see where there could be error based on the Constitutional exclusionary rule; indeed, in such a case, the trial would be entirely consistent and in accord with the exclusionary rule, not in opposition to it. The mere existence of improperly obtained evidence — the mere fact that evidence was obtained improperly — is unimportant insofar as the criminal trial is concerned unless that evidence is at least proffered at the trial.

We are, of course, not unaware that compromise agreements of one type or another — traditional plea bargains involving a plea of guilty or mutations of the sort

evident here — are often the product or natural consequence of an adverse ruling on a suppression motion. We are not blind to the natural incentive of an accused to shoot first at suppressing the incriminating evidence gathered against him and, only failing that, to consent by one means or another to a verdict of guilty on a lesser charge. And thus we recognize the indirect effect that such a ruling may have upon the subsequent strategy employed by defendants.

None of this, however, even if applicable in this case,[1] suffices to expand the exclusionary rule beyond what it is or to permit the review of convictions that are, themselves, untainted by the allegedly improper and inadmissible evidence. Notwithstanding the broad language of Maryland Rule 736g. 2, pertaining to the effect of a pretrial ruling on a suppression motion,[2] the validity of such a ruling is preserved for appellate review only if the evidence in question (or its fruits) is admitted at trial. We see no reason why this cannot be done in the context of a compromise agreement; and thus an accused is not necessarily put to the choice of abandoning his challenge to the obtention of critical evidence by entering into an agreement with the State. But to preserve his complaint, he must require the State to utilize the evidence which he has unsuccessfully challenged, and not absolve the prosecutor of that obligation by conceding the ultimate facts sought to be proved by the allegedly improper evidence.

*Judgment affirmed; appellant to pay the costs.*

---

1. There is nothing in this record to suggest such a causal connection; nor does appellant allege it in his brief.

2. "If the court grants a motion to suppress evidence, the evidence shall be excluded and shall not be offered by the State at trial, except that suppressed evidence may be used in accordance with law for impeachment purposes. If the court denies a motion to suppress evidence, the ruling is binding at the trial unless the court, in the exercise of its discretion, grants a hearing *de novo* on a renewal of the motion. *A pretrial ruling denying the motion to suppress is reviewable on a motion for a new trial or on appeal of a conviction.*" (Emphasis supplied.)