STATE

v.

Christopher SWINDELL.

No. 2003–425–C.A.

Supreme Court of Rhode Island.

April 12, 2006.

John Grasso, for Plaintiff.

Aaron L. Weisman, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice GOLDBERG, for the Court.

In this case, the Supreme Court is called upon, yet again, to determine whether evidence of a suspected drunk driver's blood alcohol concentration, as measured by a chemical analysis of the driver's breath, is admissible in a criminal prosecution based on an allegation that the equipment used to conduct the test was not tested for accuracy in accordance with methods approved by the state Department of Health (DOH). The defendant, Christopher Swindell (defendant), appeals from a judgment of conviction for driving under the influence of alcohol (DUI). The defendant argues that the trial justice erred by admitting blood alcohol test results into evidence because, he contends, the state failed to prove that the machine, used to measure the level of alcohol in his blood, had been properly tested for accuracy in accordance with G.L.1956 § 31–27–2. For the reasons stated herein, we affirm the Superior Court judgment.

## Facts and Travel

On September 7, 2002, shortly before 3 a.m., defendant was stopped by an East Providence police officer because, according to the officer, his vehicle had "a plate light out" and he was "somewhat leaning into the windshield of the car" as he was driving. During the stop, the officer detected an odor of alcohol and observed that defendant's eyes were bloodshot. The officer's attention was drawn to "an empty bottle of E & J Brandy on the rear passenger's side of the floor" and defendant's trembling hands. The officer asked defendant whether "he had been drinking." The defendant replied "that he had [consumed] a couple of beers at his friend's house." The officer noted "that the defendant mumbled" and spoke slowly, "as if fatigued."

The officer conducted field sobriety tests at the scene that defendant failed. He was placed under arrest and transported to the police station. While en route to police headquarters, the officer detected "a strong odor of intoxicating liquor coming from the defendant, [and] again observ[ed] that] his speech was slow[.]" At the police station, breath samples from an Intoxilyzer 5000 machine were obtained from defendant with his consent. The officer recorded two samples—one registered a blood alcohol level of 0.113 and the second registered a blood alcohol level of 0.122. The defendant was charged with DUI in violation of § 31–27–2.[1]

---

1. General Laws 1956 § 31–27–2, entitled "Driving under the influence of liquor or drugs," provides in relevant part:
   "(a) Whoever drives or otherwise operates any vehicle in the state while under the influence of any intoxicating liquor * * * shall be guilty of a violation or a misdemeanor * * *.
   "(b)(1) Any person charged under subsection (a) of this section whose blood alcohol concentration is eight one-hundredths of one percent (.08%) or more by weight as

On January 14, 2003, defendant was convicted of DUI in District Court and exercised his right to a *de novo* trial in Superior Court. On May 21, 2003, a hearing was held on defendant's pretrial motion to suppress the blood alcohol evidence. The defendant argued that the testing procedure did not comply with DOH guidelines because the results of the sample test were not within a 5 percent margin of error allowed by DOH. According to defendant, the test results did not take into account a potential 3 percent margin of error in the alcohol solution used to test the machine. The defendant alleged that the 3 percent range of error in the test sample, when combined with the machine's 5 percent margin of error, rendered the test invalid. Therefore, defendant argued that the blood alcohol evidence should have been suppressed.

Before the Superior Court, Richard Minogue (Minogue), an experienced DOH inspector, testified that breath test machines are tested for accuracy every thirty days using known alcohol solutions.[2] To insure the accuracy of a machine, DOH performs six tests—two tests using alcohol solutions of 0.08, 0.10, and 0.20 respectively. According to Minogue, the test results must fall within a 5 percent margin of error[3] for the machines to be certified as accurate.[4] Minogue testified that if a breath test machine does not produce a test reading within a 5 percent margin of error, the machine will be taken out of service.

Minogue testified that the test samples had a 3 percent range of error with respect to the sample's indicated alcohol content.[5] However, DOH inspectors assume that the test solution contains the amount of alcohol specified on the sample without factoring in the potential 3 percent deviation. According to Minogue, when he tested the machine used in this case with the 0.08 solution, it produced readings of 0.076 and 0.075. The 0.10 solution provided a reading of 0.095 for the first test and a reading of 0.096 for the second test. These readings were acceptable and within the DOH's regulations. The defendant argued that because of the 3 percent margin of error, the 0.10 solution potentially could have an alcohol content of 0.103. If so, defendant contended, the 0.095 and 0.096 test results fell outside the required 5 percent range of error.

The trial justice denied defendant's motion to suppress and held that any breath test machine that produced a test in the range of 0.095 to 0.105 was accurate according to DOH procedures, despite a margin of error in the solution itself. Relying on this Court's decision in *State v. Cluley*, 808 A.2d 1098, 1103 (R.I.2002), the trial justice found that DOH's interpretations of its own regulations is accorded judicial deference. The trial justice further held that defendant's blood alcohol tested in the statutory range of intoxi-

shown by a chemical analysis of a blood, breath, or urine sample shall be guilty of violating subsection (a) of this section."

**2.** Section 31–27–2(c)(5) provides that breath test machines must be tested for accuracy every thirty days if they are used to determine whether a person has been driving under the influence of alcohol.

**3.** The manufacturer of the Intoxilyzer 5000 machine maintains that the machine's margin of error is "plus or minus five percent."

**4.** Minogue later testified that a result that came within 0.005 of the 0.08 solution used on the machine would be considered accurate, despite the fact that this result is outside of the 5 percent margin of error.

**5.** For example, a 3 percent margin of error would indicate that a 0.10 alcohol solution may register a reading anywhere from 0.097 to 0.103.

cation, notwithstanding the purported margin of error in the test samples used by the agency in carrying out its statutorily mandated functions. The trial justice ruled that in accordance with this Court's holding in *State ex. rel. Town of South Kingstown v. Reilly*, 745 A.2d 745, 747 (R.I.2000), and *State ex. rel. Town of Middletown v. Snyder*, 692 A.2d 705, 706 (R.I. 1997) (mem.), a defendant must demonstrate that the deviation from a DOH regulation actually affected the validity of the test results introduced against him. The trial justice noted that the test results in this case were sufficiently high so that, even if the Court were to factor in every error asserted by the defense, "his readings would still be in the statutory range of intoxication[.]" The trial justice concluded that the DOH certification procedure was proper and the certification of the machine used to test defendant's breath complied with the regulations. Accordingly, he denied the motion to suppress the test results.[6]

When the case proceeded to trial, defendant waived his right to a jury and agreed to proceed to trial on the basis of stipulated facts. Based on those facts, the trial justice found that the traffic stop premised on an equipment violation was proper; that the officer had probable cause to believe defendant was driving under the influence of alcohol; and, that his blood alcohol level, as measured by a chemical analysis of his breath, was 0.122 and 0.113. The defendant was found guilty and was sentenced in accordance with the provisions of § 31–27–2. This appeal ensued.

## Analysis

Before this Court, defendant argues that the blood alcohol evidence should have been suppressed because the state failed to prove that the machine used in this case had been properly tested for accuracy in compliance with DOH regulations. The defendant asserts that the DOH did not comply with its own procedures—that to be certified as accurate, the machine must perform within a 5 percent margin of error of the known sample. According to defendant, because each solution carries a potential 3 percent range of error, the test results could exceed the acceptable margin of error allowed by the regulation. The defendant contends that a 3 percent margin of error in the solution resulted in tests that were outside the regulation's 5 percent range and therefore, the machine should have been taken out of service. Additionally, defendant argues that one of the 0.08 alcohol solution test results was outside the acceptable margin of error for a machine to be certified as accurate. Consequently, defendant asserts, the state failed to establish that the machine was properly tested in accordance with DOH

6. At the hearing, defendant also challenged the admissibility of the blood alcohol evidence on the ground that the machine had been tested for accuracy with an expired test solution, in violation of DOH procedures. Minogue acknowledged that using an expired alcohol solution to test a machine did not comply with DOH procedures. Minogue testified that he certified the machine used for defendant's test on August 17, 2002. However, he erroneously testified that a certificate from the manufacturer of the solution used to test the machine indicated that the 0.20 solution had an expiration date of August 7, 2002.

Nonetheless, the trial justice rejected defendant's motion to suppress on the ground that one of the three sample test solutions used by DOH had expired, finding that the deviation was *de minimis*, and properly concluded, under this Court's holding in *State ex rel. Town of South Kingstown v. Reilly*, 745 A.2d 745, 747 (R.I.2000), that the variance must be shown to have affected the validity of the test. On remand by this Court, the state proved, and the hearing justice found, that the actual expiration date was October 26, 2002. Thus, Minogue did not use an expired test solution. We deem this issue moot.

regulations and the test results should have been suppressed.

# I

## Validity of Defendant's Test Results

■ We note at the outset that because defendant has failed to establish the unreliability of his test results, his contention that DOH failed to comply with its own regulation is immaterial. This Court has held that "the suppression of evidence is justified only where the deviation from 'compliance with regulations established by the director of the Department of Health of the State of Rhode Island * * * [has] actually affected the validity of the test results.'" *Cluley*, 808 A.2d at 1104 (quoting *Snyder*, 692 A.2d at 706). Therefore, before the test may be excluded, the validity of defendant's test results must be called into question, notwithstanding any deviation from the testing protocol. *Id.* Here, defendant has not met this strict condition · precedent with respect to the reliability of his breath samples, but rather, has challenged the test results on the ground that the DOH did not comply with its regulations—an argument that specifically was rejected in *Cluley*.

The defendant argues that "[t]he actual test results obtained * * * on the night of his arrest are completely irrelevant to the legal question at issue in this case." He contends that "[a]ny suggestion that the machine's inaccuracy or unreliability would somehow inure to the benefit of the defendant * * * is improper speculation wholly unsupported by any evidence in the record." · These contentions, however, disregard our decision in *Cluley* in which we held that the results of Cluley's tests were

not brought into question simply because the testing machine registered a slightly lower amount than the amount in the test solution. *Cluley*, 808 A.2d at 1104. "Indeed, such a slight under-reporting in the machine that the police later used to test Cluley's breath would have inured to his benefit." *Id.* Simply put, here, as in *Cluley*, it is probable that defendant's blood alcohol level was slightly higher than reported by the breath test.

# II

## Department of Health Testing Procedures

■ Based on the record before the Court, we are of the opinion that the trial justice properly deferred to DOH's interpretation of its own regulations and correctly rejected defendant's arguments that evidence of his blood alcohol should be suppressed. "The law in Rhode Island is well settled that an administrative agency will be accorded great deference in interpreting a statute whose administration and enforcement have been entrusted to the agency." *Cluley*, 808 A.2d at 1103 (quoting *In re Lallo*, 768 A.2d 921, 926 (R.I. 2001)). This Court has held that "while not controlling, the interpretation given a statute by the administering agency is entitled to great weight." *Id.* (quoting *Berkshire Cablevision of Rhode Island, Inc. v. Burke*, 488 A.2d 676, 679 (R.I.1985)). Here, for blood alcohol evidence to be admissible, the only requirement is that the equipment used for the test must be tested for accuracy within thirty days of the date that the police administer a breath test to a motorist suspected of DUI. *See* G.L.1956 § 31–27–2(c)(5).[7] According to DOH regu-

---

7. Section 31–27–2 provides in part:
   "(c) In any criminal prosecution for a violation of subsection (a) of this section, evidence as to the amount of intoxicating

liquor, toluene, or any controlled substance as defined in chapter 28 of title 21, or any combination of these, in the defendant's blood at the time alleged as shown by a

lations, the "[i]nstruments must indicate the same alcohol percent as the standard alcohol solution used in the test." DOH Rules and Regulations § 7.0 D.1.

Minogue testified that notwithstanding any possible variation in the alcohol solution, the practice of the DOH is to assume that the solution is what it purports to be. Minogue further testified that this is standard DOH practice "because we have no information to tell us otherwise." The defendant argues that the inspection of the breath test machine used in this case failed to establish that the solutions tested within the 5 percent margin of error required by DOH. We disagree.

▆ In *Cluley*, 808 A.2d at 1098, this Court held that the DOH's interpretation of the word "same" as "within an acceptable range" or "within an acceptable variance * * * was not plainly wrong or at odds with the statutory requirement that the equipment be 'tested for accuracy' during the thirty-day period preceding its use." *Cluley*, 808 A.2d at 1102, 1103. Similarly, the DOH is entitled to assume that an alcohol solution, procured from a reputable supplier, designated as containing a specific level of alcohol is what the manufacturer specifies, notwithstanding an acceptable potential range of error. All that is required under § 31–27–2(c)(5) is that a machine be tested for accuracy by qualified personnel, no more than thirty days before a defendant's breath test. Although the statute does not define the meaning of "tested for accuracy," if a statute's requirements "are unclear or subject to more than one reasonable interpreta-

tion, the construction given by the agency charged with its enforcement is entitled to weight and deference as long as that construction is not clearly erroneous or unauthorized." *Cluley*, 808 A.2d at 1103 (quoting *Whitehouse v. Davis*, 774 A.2d 816, 818–19 (R.I.2001)). The DOH's policy that the alcohol content of a test solution is the amount designated on the sample is neither clearly erroneous nor unauthorized. We are satisfied that DOH's interpretation of the regulation is reasonable and the trial justice properly deferred to this interpretation.

▆ The defendant also contends that one of the tests performed by Minogue was outside the acceptable margin of error for the machine to remain in service. Minogue testified that the tests using the 0.08 solution produced readings of 0.076 and 0.075. The defendant contends that the 0.075 reading "is plainly more than five percent below the .08 percent purportedly contained in the standard alcohol solution." However, after a thorough examination of the record, we conclude that defendant did not raise this issue at trial and the issue is not properly before this Court. "This Court will not consider an issue raised on appeal that was not presented to the trial court." *State v. Russell*, 890 A.2d 453, 462 (R.I.2006) (citing *State v. Breen*, 767 A.2d 50, 57 (R.I. 2001)).

▆ We pause to note, however, that in *Cluley*, this Court recognized that for 0.10 and lesser alcohol solutions, "DOH defined the word 'same' in its regulation to mean test results that came within 0.005 grams,

chemical analysis of the defendant's breath, blood, or urine or other bodily substance shall be admissible and competent, provided that evidence is presented that the following conditions have been complied with:
"* * * *
"(5) Equipment used for the conduct of the tests by means of breath analysis had

been tested for accuracy within thirty (30) days preceding the test by personnel qualified as hereinbefore provided, and breathalyzer operators shall be qualified and certified by the department of health within three hundred sixty-five (365) days of the test."

plus or minus, of the amount of alcohol present in the tested solution." *Cluley*, 808 A.2d at 1103. Accordingly, an acceptable deviation for the 0.08 test is not 5 percent, but 0.005 grams and the tests performed in this case were within the acceptable range. During his testimony, Minogue specifically referred to the 0.08 solution and noted that the 0.075 result fell within the acceptable margin of error for the 0.08 solution.[8] We deem this a reasonable interpretation by the DOH of its statutory obligation.

## Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court. The papers in this case are remanded to the Superior Court.

---

**8.** In fact, defense counsel recognized at the Superior Court hearing that the 0.075 reading fell within the DOH's acceptable margin for the 0.08 alcohol solution when he asked Minogue, "And the .075 reading is actually the lowest permissible reading for the machine to still be certified as working properly; is that correct?" Minogue responded in the affirmative to this inquiry.