**STATE**

**v.**

**SENGLY HUY.**

**No. 2005–307–C.A.**

Supreme Court of Rhode Island.

Dec. 8, 2008.

---

Lauren S. Zurier, Providence, for Plaintiff.

Thomas F. Connors, Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice GOLDBERG, for the Court.

This case came before the Supreme Court on September 23, 2008, on appeal by the defendant, Sengly Huy (Huy or defendant), from a Superior Court judgment of conviction stemming from a police officer's discovery of a firearm in the trunk of the defendant's vehicle. After the defendant's motion to suppress the incriminating pistol was denied by the trial justice, the defendant waived his right to a jury trial and the parties filed an agreed stipulation of facts. Based on these stipulated facts, the trial justice found the defendant guilty beyond a reasonable doubt of both counts in the criminal information, to wit, carrying a pistol without a license, in violation of G.L. 1956 § 11–47–8(a) (count 1), and altering the marks of identification on a firearm, in violation of § 11–47–24[1] (count 2). On count 1, the trial justice sentenced Huy to a suspended term of six years imprisonment, with probation and a monetary fine, and on count 2, the defendant received a concurrent suspended term of one year. Huy timely appealed. For the reasons stated in this opinion, the defendant's appeal is denied and dismissed and the judgment of conviction is affirmed.

### Facts and Travel

The following testimony was elicited during the pretrial suppression hearing. Providence police patrolman Angelo A'Vant (A'Vant) testified that in February 2004 he received information from a known, reliable confidential informant that Huy carried a large caliber pistol with an attached laser site and drove a black Acura bearing Massachusetts registration. According to A'Vant, the informant also supplied him with a physical description of

---

1. General Laws 1956 § 11–47–24 provides:
"No person shall change, alter, remove, or obliterate the name of the maker, model, manufacturer's number, or other mark of identification on any firearm. Possession of any firearm upon which any of these marks shall have been changed, altered, removed, or obliterated shall be prima facie evidence that the possessor has changed, altered, removed, or obliterated it. Violation of the provisions of this section may be punished by imprisonment for not more than five (5) years."

Huy (*viz.*, "an Asian male") and the registration number of defendant's vehicle. The informant further indicated that Huy was a member of the gang known as the South Side Boys. The informant also averred that Huy carried the firearm for protection and frequented 168 Wood Street and the Hartford Avenue area of Providence. The informant did not, however, explain how he knew that defendant kept a gun in the trunk of defendant's car. A'Vant claimed that past tips from this informant had materialized into two gun seizures and arrests, but he was unsure whether those arrests had resulted in convictions.

On February 9, 2004, officers Fabio Zuena[2] and A'Vant located Huy's vehicle[3] on Hartford Avenue. A'Vant testified that he observed an Asian male driving the target vehicle, but he did not know whether the driver was Huy. A'Vant immediately radioed for backup and followed the vehicle, which was not speeding, for a short distance until it stopped on the same street. The officers momentarily watched as a young Asian male left a house and entered the automobile. Then, with the assistance of additional officers, the police stopped Huy's Acura by sandwiching it between two police vehicles. With their guns drawn, the officers approached the vehicle, removed the three occupants, and placed Huy in the back seat of a marked police cruiser. Although the parties stipulated that Huy was not restrained in handcuffs, the trial justice found that defendant was under arrest. A'Vant searched the trunk of Huy's vehicle and, under a large speaker, discovered a pistol equipped with a

laser site that had an obliterated serial number. The weapon had two rounds in the magazine. The defendant was driven to the police station, where he waived his rights and, in a statement to the police, admitted possession of the firearm.

Huy subsequently was charged with carrying a pistol without a license in violation of § 11–47–8(a), and with altering the marks of identification on a firearm pursuant to § 11–47–24. The defendant filed several pretrial motions seeking to suppress both the firearm and his statements to the police. He alleged (1) that the firearm was seized in violation of the Fourth Amendment to the United States Constitution and article 1, section 6, of the Rhode Island Constitution and (2) that his subsequent statement to the police was involuntary and was obtained as the result of an unlawful arrest. These motions were denied by the trial justice, who found that the informant's tip justified both the arrest and the subsequent search of defendant's vehicle.

At a subsequent proceeding several weeks later, defendant waived his right to a jury trial and stipulated to the facts upon which this conviction rests. Specifically, both sides stipulated to the following:

"1. During the [m]onth of February, 2004, Providence [p]olice [o]fficers Fabio Zuena and Angelo A'Vant received information from a known, reliable [c]onfidential [i]nformant that the [d]efendant, Sengly Huy, was carrying a .45 caliber gun with a laser site attached in the trunk of his vehicle, a black Acura bear-

---

**2.** Throughout the transcript of the suppression hearing officer Zuena is called "Sorena." Because the rest of the record identifies him as Zuena, however, we refer to him as such in our opinion.

**3.** The vehicle actually was owned by Lone Thammavongsa, the mother of Huy's girlfriend, Bounma Thammavongsa. According to Huy's pretrial testimony, he drove Lone's automobile on a regular basis. Bounma was sitting in the passenger seat of the vehicle when the police officers boxed it in.

ing Massachusetts registration: '53P–R09'.

"2. Confidential [i]nformant provided [p]olice [o]fficers Zuena and A'Vant with the name of the defendant, a description of the defendant, a description of the vehicle the defendant would be operating with the registration number, where the defendant could be located, and the location of the gun within the vehicle. In addition, [c]onfidential [i]nformant informed police that the defendant is a member of the South Side Boys (SSB) and carries the weapon for protection.

"3. On February 9, 2004, Providence [p]olice [o]fficers Fabio Zuena and Angelo A'Vant received information from a known, reliable [c]onfidential [i]nformant that the defendant had the gun in his vehicle and hangs in the West End and Hartford Avenue areas.

"4. Providence [p]olice [o]fficers proceeded to the Hartford Avenue area where they observed defendant's vehicle receiving a passenger (Vanny Pron) and, at that time, Providence [p]olice blocked and approached the defendant's vehicle. At that time, Providence [p]olice [o]fficers Fabio Zuena and Angelo A'Vant removed all three occupants of the vehicle, the defendant, who was in the driver's seat, his girlfriend, Bounma Thammavongsa, who was in the front passenger's seat, and Vanny Pron who was in the rear passenger's seat. The defendant was placed in the [p]olice officers' vehicle unhandcuffed. Police [o]fficer A'Vant conducted a search of the vehicle's trunk and discovered a .45 caliber with laser site hidden beneath a large speaker.

"5. The defendant was then placed under arrest.

"6. At that point, Providence [p]olice Detective Patricia Cornell was notified. Detective Cornell responded to the scene and took custody of the .45 caliber with laser site.

"7. The .45 caliber with laser site had an obliterated serial number.

"8. The defendant was taken to the [p]olice [s]tation and given his rights and made a knowing, intelligent, and voluntary waiver of his rights and gave a statement admitting that the gun was his.

"9. Defendant waives all objections to admissibility based on genuineness, originality, authenticity, and/or chain of custody of said gun and test fire documents."

Additionally, the parties stipulated that defendant did not have a license to carry the weapon. The record discloses that the stipulation of facts constituted the only proof presented at trial—neither the weapon nor defendant's confession was introduced; yet it is the alleged unconstitutional manner in which the police obtained this evidence that is the basis of this appeal.

The transcript of the jury-waived trial reveals that defendant proffered a single objection to the portion of the stipulated facts that described the state's confidential informant as reliable. Defense counsel stated that "to the extent that [the stipulation] indicate[s] that it was a reliable [c]onfidential [i]nformant, clearly that was testified to by the [s]tate, that's what we disagree with, and we say that is something we'd like to contest and have the Supreme Court review."[4]

---

4. Additionally, defendant purported to object to the fact that his statement to the police, in which he admitted that the firearm was his, was the result of a knowing, intelligent, and voluntary waiver of his rights. However, defendant has not raised the Fifth Amendment on appeal.

The trial justice did not pass upon defendant's objection, and the stipulation of facts was incorporated into the record. As noted, neither party presented any testimony nor introduced any tangible evidence. Instead, after explaining to defendant the consequences of waiving his right to a jury trial, the trial justice read the stipulated facts into the record and immediately declared defendant guilty beyond a reasonable doubt of both counts in the criminal information.

## Analysis

Before this Court, Huy contends that the officers did not have probable cause to search the trunk of his vehicle and did so in violation of his constitutional right against unreasonable searches and seizures. He appears to base this argument, not on the reliability of the informant, but on the failure of the officers to undertake a sufficient investigation to verify the informant's tip. Although defendant concedes that the officers may have had the requisite reasonable suspicion to stop the vehicle, he argues that they did not possess probable cause to arrest him at gunpoint or to search the trunk of his vehicle. Huy also contends, contrary to the stipulated facts, that he immediately was placed in handcuffs and arrested before the officers found the firearm in the trunk. Additionally, Huy asserts that his later confession was the fruit of the illegal search and arrest. *See Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

Although we are mindful of the non-frivolous issues of constitutional dimension that could be argued with respect to defendant's arrest and the search of his vehicle,

we decline to address the merits of this case. Because neither the firearm nor the confession was admitted into evidence during the state's case-in-chief, the question of whether the exclusionary rule should apply to the arrest and subsequent search of defendant's vehicle simply is not before us. We decline to decide whether a firearm or a confession that was not introduced into evidence should have been suppressed because, regardless of the answer to those questions, the ultimate result in this case would be the same: defendant stands convicted based on an agreed stipulation of facts.[5]

## Waiver

Very rarely does this Court delve into issues that were not preserved for our review. *See, e.g., State v. Bido,* 941 A.2d 822, 828–29 (R.I.2008) (discussing exception to our well-settled "raise-or-waive" rule). For us to address Huy's contention that the contraband and confession were obtained illegally, the evidence must have been introduced at trial. *See* 29 Am.Jur.2d *Evidence* § 3 at 37 (2008) ("A matter which was not introduced or presented as evidence at trial does not come within the commonly accepted definition of 'evidence.'"). The defendant must have required the prosecution "to utilize the evidence which he has unsuccessfully challenged," *Linkey v. State,* 46 Md.App. 312, 416 A.2d 286, 289 (Ct.Spec.App.1980); a defendant may not absolve the prosecutor of his or her burden of proof "by conceding the ultimate facts sought to be proved by the allegedly improper evidence." *Id.*

■ In count 1 of the criminal information, defendant was charged with a viola-

---

**5.** The dissent disagrees with this holding and criticizes the majority for declining to reach the merits of the motion to suppress. But in this case, the dissent neither addresses the

merits nor tackles the thorny question of the continued viability of the stipulation of facts should the motion to suppress be granted.

tion of § 11–47–8(a), which states in pertinent part:

> "No person shall, without a license or permit issued as provided in §§ 11–47–11, 11–47–12 and 11–47–18, carry a pistol or revolver in any vehicle or conveyance or on or about his or her person whether visible or concealed, except in his or her dwelling house or place of business or on land possessed by him or her or as provided in §§ 11–47–9 and 11–47–10."

In prosecuting defendant for an alleged violation of that section, the state had "the burden of proving 'every element necessary to constitute the crime charged beyond a reasonable doubt.'" *State v. Davis*, 877 A.2d 642, 648 (R.I.2005) (quoting *State v. Hazard*, 745 A.2d 748, 751 (R.I.2000)). The state thus was required to establish that defendant possessed a pistol or revolver and that he did not have a license or permit as required by law. Furthermore, the state was required to prove that the firearm had an obliterated serial number. However, Huy chose to stipulate to these facts and thereby relieved the state of its burden of proof.

■ Huy not only seeks a ruling that his arrest and the fruits thereof were obtained in violation of the constitutional prohibitions against unreasonable searches and seizures, but he also seeks to be relieved from the factual stipulations to which he agreed. "A stipulation entered into with the assent of counsel and their clients, relative to an evidentiary fact or an element of a claim, is conclusive upon the parties and removes the issue from the controversy." *Rhode Island Public Telecommunications Authority v. Russell*, 914 A.2d 984, 990 (R.I.2007) (quoting *In re McBurney Law Services, Inc.*, 798 A.2d 877, 881–82 (R.I.2002)).

In this case, the parties did not stipulate merely to the introduction of evidence that would be submitted to the trier of fact for its decision; rather, they agreed to the facts upon which the decision of the trial justice was based. *See Barnes v. State*, 31 Md.App. 25, 354 A.2d 499, 505–06 (Ct. Spec.App.1976) (discussing the distinction between stipulated facts and evidence offered by stipulation). "Evidence is matter that makes clear the truth of fact, persuades a court of the existence of fact, or produces a just conviction of truth. * * * The word 'evidence' thus includes all the means by which any fact in dispute at a judicial trial is established or disproved." 29 Am.Jur.2d *Evidence* § 1 at 36.

This Court previously has recognized the widely accepted force of stipulations on subsequent appeals:

> "When an adverse party is willing to stipulate to the truth of a certain allegation, the party having the burden of proving that allegation is relieved from proving it, that is, a stipulation renders proof unnecessary and both prevents an independent examination by a judicial officer or body with respect to the matters stipulated and binds the parties on appeal." *Russell*, 914 A.2d at 990 (quoting 73 Am.Jur.2d *Stipulations* § 17 at 500–01 (2001)).

Here, the state and defendant stipulated that Huy unlawfully possessed a firearm with an obliterated serial number, thus rendering the elements of both crimes uncontested. The state did not produce evidence—testimonial or tangible—to prove the truth of its allegations against defendant, nor was the trial justice required to pass upon the weight of the evidence. Huy's objection to the stipulation concerning the informant's reliability is immaterial because questions about the reliability of the informant or the credibility of the evidence were of no moment to the trial justice's findings. Consequently, because defendant relieved the state from its bur-

den of introducing the evidence he asks us to suppress, we decline to address whether that evidence should have been suppressed.

▪ This Court recently has stressed "the prophylactic purposes that underlie the [exclusionary] rule—'to deter law enforcement officers from violating a defendant's rights.'" *State v. Barkmeyer,* 949 A.2d 984, 998 (R.I.2008) (quoting *United States v. Almeida,* 434 F.3d 25, 28 (1st Cir.2006)). "Because suppression of relevant and incriminating evidence 'will often have the effect of allowing criminals to go unpunished, it is justified only as a means of deterring the police from violating constitutional and statutory rights.'" *Id.* (quoting *United States v. Silvestri,* 787 F.2d 736, 740 (1st Cir.1986)). The exclusionary rule is not intended to assuage the harm caused to persons who suffer as a result of an illegal search and seizure, *Pennsylvania Board of Probation and Parole v. Scott,* 524 U.S. 357, 362, 118 S.Ct. 2014, 141 L.Ed.2d 344 (1998) (citing *United States v. Leon,* 468 U.S. 897, 906, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)); it instead serves to deter unlawful police conduct by prohibiting the use of illegally obtained evidence during the prosecution's case-in-chief. Its availability is limited to situations "where its deterrence benefits outweigh 'its substantial social costs.'" *Hudson v. Michigan,* 547 U.S. 586, 591, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006) (quoting *Scott,* 524 U.S. at 363, 118 S.Ct. 2014, and *Leon,* 468 U.S. at 907, 104 S.Ct. 3405).

Consequently, if the alleged improperly obtained evidence has not been admitted at trial, there is nothing that the exclusionary rule can accomplish. In such a case, the deterrent function served by the exclusionary rule has no place. *See Linkey,* 416 A.2d at 288–89 ("If such evidence is never admitted * * * at trial, it is difficult to see where there could be error based on the [c]onstitutional exclusionary rule; indeed, in such a case, the trial would be entirely consistent and in accord with the exclusionary rule, not in opposition to it."). Because we are of the opinion that based on the record before us the poisonous tree is devoid of fruit, we decline to consider the constitutional issues raised in this appeal.

## Conclusion

Accordingly, we are satisfied that the defendant failed to preserve his Fourth Amendment contentions on appeal. For the reasons stated herein, the appeal is denied and dismissed and the judgment of conviction is affirmed. The papers in this case may be remanded to the Superior Court.

### Justice FLAHERTY, dissenting.

I respectfully dissent from the holding of the majority that the defendant failed to preserve his Fourth Amendment contentions on appeal.

The record on appeal reflects the following facts. The defendant was arraigned and charged with violating G.L. 1956 § 11–47–8(a)[6] and § 11–47–24, and he pled "not guilty." The defendant vigorously contested the constitutionality of the search and seizure over two days of hearings on his motion to suppress evidence of the firearm in question and his statement to police.

---

6. General Laws 1956 § 11–47–8(a) provides in pertinent part:

"No person shall, without a license or permit issued as provided in §§ 11–47–11, 11–47–12 and 11–47–18, carry a pistol or revolver in any vehicle or conveyance or on or about his or her person whether visible or concealed, except in his or her dwelling house or place of business or on land possessed by him or her or as provided in §§ 11–47–9 and 11–47–10."

At the suppression hearing, Huy testified, presented his passenger as a witness, and cross-examined the state's three police witnesses. After the motion to suppress was denied, he waived his right to a jury trial. Huy stipulated to the date of his arrest and to the fact that he did not have a license to carry a weapon. He also assented to a stipulation based on the facts elicited at the suppression hearing, which the trial justice read into the record. Huy made "qualifications" to the stipulation so that he could contest the voluntariness of his confession and the reliability of the informant. Counsel then explained that those issues would be the subject of an appeal to this Court, an intention which the trial justice acknowledged on the record. After reading the stipulation into the record, the trial justice recited the standard for a motion to dismiss and acknowledged his duty to "weigh and evaluate the trial evidence, pass upon the credibility of the trial witnesses and engage in the inferential process." The state and Huy each rested, and the court then found that, "[b]ased upon the stipulation, based upon the hearing that the Court held in this matter on February 21 st and 22nd of 2005 in the Motion to Suppress, and based upon the stipulated facts, recognizing the qualifications" made by defense counsel, the evidence was "sufficient to find guilt beyond a reasonable doubt." The court then found Huy guilty of the charges and again acknowledged Huy's intent to appeal.

### The exclusionary rule

The majority is troubled by the fact that neither the gun nor Huy's incriminating statement was entered into evidence during the jury-waived trial. Citing *Linkey v. Maryland,* 46 Md.App. 312, 416 A.2d 286 (Ct.Spec.App.1980), it concludes that the exclusionary rule is not implicated unless the challenged evidence is introduced at trial. *See id.* at 288–89. In *Linkey,* the

defendant was charged with murder and moved to suppress certain incriminating statements he had made to the police. *Id.* at 288. After the court denied his motion, the parties entered into a plea bargain, under the terms of which the defendant pled not guilty and the state submitted an "agreed statement of facts" in which the defendant assented to the "ultimate facts": that the defendant stabbed the victim to death with malice and without justification. *Id.* The Maryland Court held that the defendant's appeal was not properly preserved because the evidence that he argued that law enforcement had improperly obtained—the incriminating statements— was not referred to or submitted at trial, nor was it considered in determining his guilt. *Id.* at 288–89. Rather, the prosecutor merely rested on the agreed statement of ultimate facts. In my opinion, the rule set forth in *Linkey* does not apply to this appeal because, as discussed further below, this defendant did not admit all essential elements of the crimes charged. Equally important here, in contrast to *Linkey,* this defendant's statement and the firearm found in his vehicle were considered by the trial justice as the result of the testimony of the police officers who testified in the suppression hearing, even though they physically did not become part of the trial record.

Furthermore, I disagree with the majority's view that the poisonous tree lacked fruit. In *Linkey,* the court reasoned that the exclusionary rule keeps out tainted evidence, so that if the tainted evidence, or its fruit, never becomes part of the evidentiary bundle at trial, the conviction is not based on any error that would warrant the application of the exclusionary rule. But, there is no requirement that evidence that a defendant seeks to exclude must be documentary or tangible in nature. To the contrary, under the Fourth Amendment,

there is "no basis in the cases or in logic for distinguishing between the introduction into evidence of physical objects illegally taken and the introduction of testimony concerning objects illegally observed." *McGinnis v. United States*, 227 F.2d 598, 603 (1st Cir.1955) (holding suppression of evidence of illegal search extends to testimony of observations made during the search); *see also United States v. Crews*, 445 U.S. 463, 470, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980).

Here, although the prosecutor never offered the actual firearm or the documents containing Huy's incriminating statement at trial, in my judgment this is irrelevant to the preservation of Huy's appeal. Huy's pre trial motion sought to "suppress any and all reference to or use of, tangible evidence seized" and "all use of or reference to any evidence derived from this unlawfully seized material." There can be no doubt that the trial justice considered the fruit of the alleged illegal search. He considered the police officer's testimony that he found a weapon in the trunk of the car. Also, he considered the police officer's testimony that Huy gave a statement in which he admitted to owning the firearm.[7] Therefore, I cannot agree that Huy

waived his appeal merely because neither the firearm nor the incriminating statement was entered into evidence as a tangible object.

## Huy's stipulated-bench trial is not a plea of guilty

In effect, the majority's decision essentially equates Huy's stipulated-bench trial to a guilty plea by concluding that Huy waived his right to appeal to this Court because he stipulated to the facts and relieved the prosecutor of her burden of proof. *See State v. Keohane*, 814 A.2d 327, 329 (R.I.2003) (guilty plea waives appeal of issue of motion to suppress). It is significant that this Court has never held that a defendant waives his appeal of a suppression motion when he pleads not guilty and participates in a stipulated-bench trial.[8] To the contrary, in *State v. Dustin*, 874 A.2d 244 (R.I.2005), we held that a defendant did not waive his appeal when he stipulated to the criminal information packet because "the adversarial nature of the proceedings below were sufficient to preserve the hearing justice's denial of defendant's pretrial motion to suppress."[9] *Id.* at 247.

---

**7.** The exclusionary rule may apply to a defendant's incriminating statements obtained by exploitation of illegally seized evidence. *See State v. Jennings*, 461 A.2d 361, 368 (R.I. 1983).

**8.** In fact, I take note of several cases in which, although waiver was not at issue on appeal, this Court reached the merits of appeals based on motions to suppress after defendants were found guilty after stipulated-bench trials. *See State v. Swindell*, 895 A.2d 100, 103–04 (R.I.2006) (reaching merits of appeal of motion to suppress breath test results after stipulated-facts bench trial); *State v. Black*, 721 A.2d 826, 828 (R.I.1998) (vacating conviction upon appeal of denial of motion to suppress after the defendant's stipulation to facts elicited at suppression hearing and facts contained in criminal information

package); *State v. Roberts*, 420 A.2d 837, 839 (R.I.1980) (reaching merits of constitutional suppression issue on appeal after the defendant was found guilty after stipulated bench trial).

**9.** Although in *State v. Dustin*, 874 A.2d 244 (R.I.2005), we expressed reservation and cautioned defendants against circumventing the rule against conditional pleas, it is important to note that this Court decided *Dustin* in 2005, after Huy's trial was completed. It would be manifestly unfair to hold Huy to this vague cautionary rule, post hoc, that did not expressly prohibit appeals of stipulated-facts trials. I also distinguish *State v. Beechum*, 933 A.2d 687 (R.I.2007), where we held that a stipulated-facts trial waived the defendant's appeal. *Id.* at 690. In *Beechum*, the defendant challenged the racial mix of the jury

In my opinion, the better reasoned view is that a stipulated-bench trial usually avoids the waiver rule. *See People v. Sullivan*, 72 Ill.App.3d 533, 29 Ill.Dec. 82, 391 N.E.2d 241, 243 (1979). In *Sullivan*, the court held that defendant's stipulated-bench trial was not tantamount to a guilty plea when the state set forth facts that would be brought out in testimony and defendant presented no evidence, because he maintained a challenge as to admissibility of evidence. *Id.* at 243–44. "In a stipulated facts trial, the judge or jury still determines the defendant's guilt or innocence; the State must prove beyond a reasonable doubt the defendant's guilt; and the defendant is not precluded from offering evidence or cross-examining witnesses but in essence, by the stipulation, agrees that what the State presents is what the witness would say. Furthermore, in a stipulated facts trial the defendant maintains his right to appeal * * *." *State v. Johnson*, 104 Wash.2d 338, 705 P.2d 773, 775–76 (1985). As a result, when a defendant's pretrial motion to suppress is denied, a defendant does not waive his appeal with respect to the admissibility of the evidence by submitting his case to a bench trial based on stipulated evidence. *See State v. Gossett*, 120 Ariz. 44, 583 P.2d 1364, 1366 (Ct.App.1978) (holding the defendant did not waive appeal of denial of motion to suppress in bench trial after he stipulated to hearing transcript and police records).

In the case at hand, the proceedings below were distinctly adversarial. Huy did not plea bargain, he did not plead guilty, he did not plead nolo contendere, he did not waive his right to present evidence, and he did not waive his right to cross-examine witnesses. The trial justice weighed the evidence, engaged in inferential fact-finding, and found sufficient evidence to conclude that Huy was guilty. During the trial, Huy also asserted "qualifications" that were essentially defenses challenging the admissibility of the state's evidence. *See Sullivan*, 29 Ill.Dec. 82, 391 N.E.2d at 243 (stipulated-bench trial does not waive an appeal when defendant asserts a defense relating to the admissibility of the evidence). Furthermore, it is very clear from reading the record that Huy, his counsel, the trial justice, and the prosecutor, all believed that by participating in a stipulated-bench trial, Huy would not be giving up his right to appeal to this Court; indeed, he specifically preserved it. Therefore, I do not believe that Huy waived his appeal merely by submitting to a stipulated-bench trial.

**Huy's appeal is not moot**

It seems to me that the majority's opinion is based upon principles of mootness. In other words, it suggests that a ruling by this Court would not affect the conviction and would therefore, not redress Huy's injury. *Cf. United States v. Larson*, 302 F.3d 1016, 1018–20 (9th Cir.2002) (holding appeal of suppression motion mooted by stipulation to all elements of crime). The majority asserts that because Huy stipulated to the facts upon which his conviction rests, even if the contested evidence were suppressed, the conviction would still

---

pool, but no jury was ever seated in his case because of his stipulated-facts trial. *Id.* at 689–90. This Court held that the stipulated-facts trial was tantamount to a conditional plea because defendant did not examine witnesses, merely incorporated the record from another trial into the record in his trial, and entered into a plea bargaining agreement for

an amended indictment and reduced sentence. *Id.* at 690–91. Unlike Beechum, Huy never entered into any plea bargaining agreement, he presented defenses at trial, and testified and examined four other witnesses at the suppression motion hearing. Furthermore, *Beechum* also was decided after Huy's trial.

stand. In addressing this issue, several courts have held that when a defendant stipulates to the "ultimate facts" or "each element of the crime," the conviction is in essence untainted by illegal evidence and thus not subject to appeal on the basis of a motion to suppress that was denied. *See id.* at 1018 (defendant stipulated that he was a felon and "knowingly had in his possession" a pistol that crossed state lines); *Linkey,* 416 A.2d at 288 (defendant stipulated that he stabbed the victim to death "with malice, but without premeditation, deliberation, and without justification, excuse or mitigating circumstances"). Those courts reason that because the conviction rests solely on the stipulation, there is no error to address on appeal. *See Larson,* 302 F.3d at 1019; *Linkey,* 416 A.2d at 288–89. Under these circumstances, "[a]ll the court was asked to do was to determine whether, as a matter of law, those facts sufficed to constitute [the charged crime]." *Linkey,* 416 A.2d at 288 (citing *Barnes v. State,* 31 Md.App. 25, 354 A.2d 499 (Ct.Spec.App.1976)); *see also Larson,* 302 F.3d at 1019 ("the stipulation itself was sufficient to convict him").

However, unlike *Linkey* or *Larson,* and contrary to the majority's assertion, I respectfully submit that Huy did not concede to "the ultimate facts sought to be proved." The defendant did not stipulate that he *knowingly* carried a firearm with obliterated marks. Rather, he stipulated that he did not have a license to carry a firearm, that he "was in the driver's seat," that "[p]olice [o]fficer A'Vant conducted a search of the vehicle's trunk and discovered a .45 caliber with laser site hidden beneath a large speaker," and that "[t]he .45 caliber with laser site had an obliterat-

ed serial number." An essential element to convict under § 11–47–8(a) requires "conscious carrying," and there must be proof that "the defendant's knowledge was there, that he was knowingly carrying a pistol in that vehicle." *State v. Benevides,* 425 A.2d 77, 79–80 (R.I.1981). The defendant never admitted or stipulated that he knowingly possessed the firearm or that he was conscious of the presence of the firearm in the trunk of the automobile he was driving. The stipulation simply does not address the necessary element of Huy's mental state.[10] The element of knowledge is typically established by circumstantial evidence and logical inferences. *See, e.g., State v. Hernandez,* 641 A.2d 62, 72 (R.I.1994); *State v. Mercado,* 635 A.2d 260, 263–64 (R.I.1993). Making inferences is a function of the fact-finder. *Labbe v. Hill Brothers, Inc.,* 97 R.I. 269, 273, 197 A.2d 305, 308 (1964). Thus, to render a judgment of conviction in this case, the trial justice was required to make an inference that Huy knew there was a firearm in the trunk of his girlfriend's mother's car at the time he was driving it. It is clear to me that the court was asked to do more than just "determine whether, as a matter of law, those facts sufficed to constitute [the crime charged]." *Linkey,* 416 A.2d at 288. Furthermore, it is clear from the record that the trial court weighed evidence other than the stipulation when the trial justice said that he also considered the testimony from the two days of the suppression hearing when he found Huy guilty. Therefore, the defendant's conviction was not based solely on the stipulation, and the argument that it

---

**10.** Although the record contains the stipulation that Huy gave a statement admitting that the gun belonged to him, he asserted the defense that the statement was not voluntary. Furthermore, this statement does not amount to an admission that Huy knew that his gun was in the car or that he knew he was carrying the gun. *See* § 11–47–8(a); *State v. Benevides,* 425 A.2d 77, 79 (R.I.1981).

was tainted by illegal evidence should remain viable.

### The distinction between stipulations and agreed facts

I agree with the majority that there may be a difference in the effect of stipulating to the facts that the evidence will show and submitting an agreed statement of facts. *See Barnes*, 354 A.2d at 505. When a party agrees to the "ultimate facts," the facts are no longer in dispute and they are established as true. *Id.* Furthermore, when a party enters into an agreed statement of facts those facts are binding on the parties on appeal. *Rhode Island Public Telecommunications Authority v. Russell*, 914 A.2d 984, 990 (R.I.2007).[11] Alternatively, when a party stipulates to the facts in evidence, there is no agreement as to the "ultimate facts;" rather, the stipulation only pertains to what the testimony of a particular witness would be if he were testifying. *Barnes*, 354 A.2d at 505. "The agreement is to what the evidence will be, not to what the facts are." *Id.*

I see little foundation for the majority's assumption that Huy "agreed to the facts upon which the decision of the trial justice was based." In my opinion, this is not so clear from the record. The written document entered into the record is simply entitled "Stipulation." When presented with the stipulation, the trial justice, remarked, "I might add for the record that the Court has held a motion to suppress in this case. The stipulated facts seem to track the evidence that came out in that hearing on that motion." Further, Huy's counsel said that "these were the facts that were elicited at the suppression hearing, and that's why we agree and stipulate to that."[12] The introduction portion of the stipulation document says that the parties "agree and stipulate to the following facts elicited at the [s]uppression [h]earing." Respectfully, I cannot concur with the majority's conclusion that Huy agreed to the "ultimate facts."[13]

### Conclusion

In sum, the majority's decision dispatches Huy's appeal as if he had pled guilty, when he clearly did not intend to waive his rights to a decision by a fact-finder. To preserve his appeal, the majority would have him go through the repetition of a proceeding in which the state would call

---

11. Huy is not seeking to withdraw his stipulation or contradict any stipulated facts on appeal. Rather, his appeal is based on facts submitted to the Court by stipulation that flowed from the testimony in the suppression hearing relating to an illegal search. With all due respect, I believe that the majority needlessly latches on to the fact that Huy attempted to contradict the stipulation by arguing he was arrested before the search. At oral argument, however, Huy's counsel acknowledged that his argument that there was an illegal arrest would not affect the outcome of his appeal. This is so because if the police had probable cause to search the vehicle at the time of the stop, whether he was arrested before or after the weapon was discovered would have no bearing on the outcome of the appeal. Likewise, if the police lacked probable cause to search, the illegality of the arrest would not change the outcome. Consequent-

ly, Huy essentially waived the arrest argument, basing his case solely on his arguments about the illegality of the search.

12. It should be no surprise that at oral argument, Huy's counsel asserted that the stipulation was to evidence.

13. Huy's stipulation that he did not have a license to carry a weapon was made separate from the stipulation read into the record and can fairly be considered an agreed statement of fact rather than a stipulation of evidence because this fact was never elicited at the suppression hearing. The fact that Huy made this factual assertion separate from the stipulation at issue further supports a conclusion that the latter was meant to serve as an agreement only to the content of the testimony.

the exact same witnesses to offer the same testimony that already had been offered at the suppression hearing, and before the same trial justice, sitting as fact-finder in a jury-waived trial. This not only burdens the defendant by placing an unnecessary roadblock to the exercise of the right to appeal, but it also burdens the efficient administration of justice and strains judicial resources. For all these reasons, in my opinion, Huy did not waive his appeal, and thus, I respectfully dissent from the holding in this case.