996 A.2d 156 (2010)
STATE
v.
Wilder E. FLORES.
No. 2008-281-C.A.
Supreme Court of Rhode Island.
June 21, 2010.
*157 Christopher R. Bush, Department of Attorney General, for Plaintiff.
Scott A. Lutes, Esq., Providence, for Defendant.
Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, and ROBINSON, JJ.

OPINION
Justice GOLDBERG, for the Court.
The state of Rhode Island appeals from a Superior Court order granting the motion of the defendant, Wilder E. Flores (defendant or Flores), to suppress evidence that was seized from his automobile during a lawful traffic stop. This case came before the Supreme Court for oral argument on November 4, 2009, pursuant *158 to an order directing both parties to appear and show cause why the issues raised by this appeal should not summarily be decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we determined that cause had been shown and assigned this case to the regular calendar for full briefing and argument. We heard oral arguments on April 13, 2010. For the reasons set forth below, we vacate the judgment of the Superior Court.

I

Facts and Travel
On June 23, 2007, two Providence police officers, John C. Bento and Sean Cornelia, were on patrol in their marked cruiser.[1] At approximately 9 p.m., the officers heard a loud screech consistent with the sound of a car's peeling tires; they observed a large pickup truck approaching their cruiser at a high rate of speed. The officers immediately activated their cruiser's lights and siren and stopped the vehicle. Officer Bento, the operator of the cruiser, approached the pickup truck's driver's side door, while Officer Cornelia moved toward the passenger side. Officer Bento aimed his flashlight into the vehicle,[2] and he observed an open bottle of beer that was wedged between the driver's seat and the center console. Officer Bento then asked to see Flores' license. Officer Cornelia testified that he observed that defendant's hands were trembling, although he made no furtive movements. As defendant was retrieving his license from the center console, Officer Bento, in accordance with standard police procedure, kept defendant illuminated with his flashlight.
When Flores opened the center console, Officer Bento was able to see the inside of the compartment. Officer Bento testified that as defendant opened the center console, "there was a wallet and there [were] two largepretty large clear plastic bags with a white substance[.]" Officer Bento testified that he had an unobstructed viewfor about two secondsof the inside of the center console and he "observed the clear plastic bags sitting right there underneath the wallet." The officer testified that "when I observed the clear plastic bags, it raised a suspicion. I mean, I almost kind of knew it was cocaine, based on my experience." (Emphases added.) Officer Bento testified that he took the license from the driver, "told him to step out of the vehicle * * * [and] placed him into custody" in the back of the police cruiser. He returned to the truck and "immediately went into the center console where I observed the clear plastic bags." He seized them. Officer Bento testified that when he saw the plastic bags of white powder in the center console, based on his experience and training in how to identify cocaine, including how it commonly is packaged, he immediately placed defendant under arrest.
The record discloses that at the time of this arrest, Officer Bento had been a patrolman for approximately two and one-half years. He was trained at the police academy in narcotics recognition, particularly the manner in which cocaine is packaged for sale and transport. Officer Bento testified that although he believed that he could have arrested Flores for operating a *159 motor vehicle with an open container of alcohol,[3] he arrested him for possession of cocaine. Officer Cornelia testified that, as Officer Bento escorted defendant to the police cruiser, he went into the vehicle to secure whatever the item wasweapon or contrabandthat caused Officer Bento to arrest defendant. Officer Cornelia opened the compartment and saw the cocaine "right on top" but did not seize it. Subsequent testing by the Rhode Island Forensic Science Laboratory revealed that the two bags contained nearly seven ounces of powdered cocaine. Although Officer Bento had made approximately 250 to 300 narcotics arrests during the course of his career, including drug distribution offenses, this was his first arrest involving such a large quantity of cocaine.[4]
On July 22, 2008, Flores moved to suppress the evidence seized from his vehicle. After hearing testimony from both officers, the trial justice granted the motion. The trial justice acknowledged that the standard for determining whether there is probable cause "is whether a reasonably prudent * * * officer of [like] training and skill would, after looking at everything before him, conclude that there is a probability that criminal activity has occurred." However, he found that in the context of this case, Officer Bento's probable-cause determination was only "based upon that very brief view of these packages that were in the console[.]"[5] The trial justice found that Officer Bento's brief view of what was later determined to be a large amount of cocaine was not enough to lead "a reasonably prudent person or officer of training and skill" to conclude that there was a "probability that criminal activity has occurred."
The trial justice ruled that there was a distinction between the quantum of evidence necessary for probable cause to arrest and probable cause for a search, and he implied that the standard was greater for an arrest. Notwithstanding Officer Bento's testimony that "when [he] observed the clear plastic bags, it raised a suspicion [and] * * * [he] almost kind of knew it was cocaine, based on [his] experience," the trial justice found that "in the two or three seconds involved" in this case, the officer "made a rush to judgment." The trial justice declared that the officer "determined that, in fact, the defendant was in possession of cocaine and he arrested him." Significantly, the trial justice found as follows:
"He didn't detain him. He didn't question him. He didn't ask for his permission to check it out. He simply put the cuffs on him[,] behind his back[,] and put him in the back seat and he said, `I arrested him for possession of cocaine. I did not arrest him for the open bottle or any traffic violation.' And then, he went back to see if his hunch was correct. And as it turns out, his hunch was correct, but that's after the fact."
*160 The trial justice concluded that based on all the circumstances, a reasonable person would have questioned whether there was probable cause to arrest defendant. "There would have been some significant uncertainty and there would not have been the level of probability or probable cause necessary to make that arrest at that point. * * * So, unfortunately, for the officer in this case who, I think, was probably well intended, he jumped the gun." The trial justice determined that the officer should have taken Flores to the back of the vehicle, placed his hands on the vehicle, and detained him there while he conducted a plain-view seizure; he said that the officer should have touched and manipulated the item and "perhaps going beyond that in some way, even testing it, if necessary, * * * as [opposed] to cuffing [defendant], putting him in the back seat and saying he is under arrest[.]" Accordingly, the trial justice granted Flores' motion to suppress. Judgment was entered on October 24, 2008, from which the state timely appealed.[6]

II

Standard of Review
When reviewing a trial justice's decision granting or denying a motion to suppress, "we defer to the factual findings of the trial justice, applying a `clearly erroneous' standard." State v. Barkmeyer, 949 A.2d 984, 995 (R.I.2008) (quoting State v. Apalakis, 797 A.2d 440, 443 (R.I.2002)). We conduct a de novo review, however, of "a trial justice's determination of the existence or nonexistence of probable cause or reasonable suspicion." State v. Foster, 842 A.2d 1047, 1050 (R.I.2004) (quoting State v. Keohane, 814 A.2d 327, 329-30 (R.I.2003)).

III

Discussion
We begin by noting that, although the trial justice suggested that Officer Bento should have detained defendant rather than arrest him, when the police detain a person, "even if briefly, the Fourth Amendment is implicated and the detention must be in conformance with the strictures of that amendment." State v. Bjerke, 697 A.2d 1069, 1071 (R.I.1997) (citing Delaware v. Prouse, 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979)). "A police officer has `seized' a person, within the meaning of the Fourth Amendment, when he [or she] restrains that person's freedom to walk away." Foster, 842 A.2d at 1050. Such a seizure generally must be supported by probable cause, even if a formal arrest has not been made. Id. (citing Apalakis, 797 A.2d at 444).
The Fourth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, provides: "The right of the people to be secure in their persons * * * against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause * * *." See Foster, 842 A.2d at 1050 n. 3 (declaring that article 1, section 6, of the Rhode Island Constitution is "substantively the same" as the Fourth Amendment). "Although the interest protected by the Fourth Amendment injunction against unreasonable searches is quite different from that protected by its injunction against unreasonable seizures * * *, neither the one nor the other is of inferior worth or necessarily requires only lesser protection." Arizona v. Hicks, 480 U.S. 321, 328, *161 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987). "It is generally assumed by the Supreme Court and the lower courts that the same quantum of evidence is required whether one is concerned with probable cause to arrest or probable cause to search." Wayne R. LaFave, Search and Seizure, ch. 3, § 3.1(b) at 8 (4th ed. 2004); see Hicks, 480 U.S. at 328, 107 S.Ct. 1149 ("We have not elsewhere drawn a categorical distinction between [search and seizure] insofar as concerns the degree of justification needed to establish the reasonableness of police action, and we see no reason for a distinction * * *.").
The Fourth Amendment requires that a police officer have probable cause to believe a suspect has committed a crime before he or she lawfully can arrest that person without a warrant. See Michigan v. DeFillippo, 443 U.S. 31, 36, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979). The test for probable cause involves an objective assessment in which the examining court determines, under the totality of the circumstances, whether "`the facts and circumstances within * * * [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." Maryland v. Pringle, 540 U.S. 366, 372 n. 2, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003) (quoting Brinegar v. United States, 338 U.S. 160, 175-76, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949)); see State v. Girard, 799 A.2d 238, 249 (R.I.2002) ("Probable cause to arrest exists when the facts and circumstances within the police officer's knowledge and of which he has reasonably trustworthy information are sufficient to warrant a reasonable person's belief that a crime has been committed and that the person to be arrested has committed the crime.") (quoting State v. Kryla, 742 A.2d 1178, 1182 (R.I.1999)). Probable cause "does not demand any showing that such a belief be correct or more likely true than false." Texas v. Brown, 460 U.S. 730, 742, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983); see United States v. Humphries, 372 F.3d 653, 656, 660 (4th Cir.2004) (reversing lower court decision that "probable cause [means] `more likely than not'"). Mere suspicion, however, is insufficient and, if an arrest is unlawful at the time it was made, nothing the officer learns subsequently can remove that taint. See Rios v. United States, 364 U.S. 253, 261-62, 80 S.Ct. 1431, 4 L.Ed.2d 1688 (1960) (if probable cause absent at time of arrest, "then nothing that happened thereafter could make that arrest lawful, or justify a search as its incident"); United States v. Myers, 308 F.3d 251, 263 (3d Cir.2002) (weapon discovered after arrest may not be used to establish probable cause to support that arrest); United States v. Prandy-Binett, 995 F.2d 1069, 1070 (D.C.Cir.1993) (probable cause lies somewhere beyond "bare suspicion").
The Court must evaluate whether probable cause exists by a careful examination of the totality of the circumstances that confronted the officer on the scene, always mindful that "probable cause is a fluid conceptturning on the assessment of probabilities in particular factual contextsnot readily, or even usefully, reduced to a neat set of legal rules." Illinois v. Gates, 462 U.S. 213, 230, 232, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); see Holmes v. State, 368 Md. 506, 796 A.2d 90, 98 (2002) ("With the possible exception of `due process,' there is probably no two-word term in American law that has produced as much confusing commentary as `probable cause,' largely because it has such a roving context."). Probable cause is determined by evaluating probabilities. State v. Ortiz, 824 A.2d 473, 481 (R.I.2003). *162 "These probabilities `are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent [people], not legal technicians, act.'" Id. (quoting Brinegar, 338 U.S. at 175, 69 S.Ct. 1302). "[T]he evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." United States v. Cortez, 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). Thus, we focus our attention on whether, based on the totality of the circumstances, the arresting officer was in possession of sufficient and reliable information to warrant a prudent and experienced police officer to believe that the suspect has committed a crime. State v. Guzman, 752 A.2d 1, 4 (R.I.2000).
It is well established, that "[t]he experience and expertise of the officers involved in the investigation and arrest may be considered in determining probable cause." United States v. Hoyos, 892 F.2d 1387, 1392 (9th Cir.1989), overruled on other grounds by United States v. Ruiz, 257 F.3d 1030 (9th Cir.2001). The quantum and quality of the information in the police officer's knowledge is evaluated first on the basis of the objective observations of the officer "and consideration of the modes or patterns of operation of certain kinds of lawbreakers." Cortez, 449 U.S. at 418, 101 S.Ct. 690. A critical component of this analysis is that unlike an untrained professional, an experienced police officer "draws inferences and makes deductions" from these facts based on his or her training and practice. Id; see United States v. Ortiz, 422 U.S. 891, 897, 95 S.Ct. 2585, 45 L.Ed.2d 623 (1975) ("officers are entitled to draw reasonable inferences from these facts in light of their knowledge of the area and their prior experience").
An officer's plain-view observations may constitute probable cause to arrest when (1) the officer legitimately is in a position to make his observation and (2) the incriminating character of the object in plain view is "immediately apparent." Horton v. California, 496 U.S. 128, 136-37, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990). In the case at bar, defendant concedes that the initial traffic stop was lawful. Accordingly, because the officers lawfully were in a position to view the inside of Flores' vehicle, including the open compartment, they properly could rely on their plain-view observations when deciding whether there was probable cause to arrest defendant. The issue before this Court is whether Officer Bento's two-second observation of clear plastic bags containing white powder was sufficient to give rise to probable cause to arrest. Our careful de novo review of the record before us leads us to conclude that Officer Bento was afforded an adequate opportunity to see and immediately identify what he "almost kind of knew" was cocaine and, while not the only circumstance within the officer's knowledge at the time, we are of the opinion that this observation supplied a sufficient quantum of evidence of criminal activity to support the arrest in this case.
The United States Supreme Court has long recognized that a police officer's training and experience may specially qualify him to identify narcotics from observations that would not necessarily be significant to a layperson. See Johnson v. United States, 333 U.S. 10, 13, 68 S.Ct. 367, 92 L.Ed. 436 (1948) (officer "qualified to know the odor" may identify opium). Many jurisdictions have considered a police officer's experience when determining whether a plain-view observation of cocaine was sufficient to establish probable cause. See, e.g., United States v. Rosario, 638 F.2d 460, 462 (2d Cir.1980) (officer with twelve years experience could identify *163 white powdery substance as cocaine); Blackmon v. United States, 835 A.2d 1070, 1074 (D.C.2003) (officer with eighteen years experience could identify white rock-like substance as cocaine); State v. Gordon, 646 So.2d 1005, 1010 n. 6 (La.Ct.App. 1994) (officer's three years of experience and several hundred narcotics arrests relevant to probable cause determination); People v. Coleman, 183 A.D.2d 840, 584 N.Y.S.2d 89, 90 (N.Y.App.Div.1992) (eighteen year veteran could identify a plastic bag containing vials as cocaine). In this case, the trial justice heard undisputed testimony that Officer Bento was trained in narcotics identification, had been assigned to the same area of the city for two and one-half years, and had made 250 to 300 narcotics arrests. We are satisfied, therefore, that Officer Bento's experience and training made him specially qualified to identify cocaine.
We recognize, however, that notwithstanding the officer's undisputed experience, training and qualifications, the "incriminating character" of the object must be "immediately apparent" to justify arrest. See Horton, 496 U.S. at 136, 110 S.Ct. 2301.[7] There is ample support for the state's contention that a police officer readily can identify cocaine by plain-view observation.[8] Moreover, the plain-view observation of a white powder that is packaged in a clear plastic bag, standing alone, has been found to be sufficient indicia of probable cause. See State v. Jackson, 778 So.2d 23, 28, 29 (La.Ct.App.2000) (officer had probable cause to arrest when, during a lawful traffic stop, he observed a "zip-lock bag containing white powder in plain view on the floor of the car between the seat and the door"); Commonwealth v. Santana, 420 Mass. 205, 649 N.E.2d 717, 719, 721-22 (1995) (probable cause to arrest when officer notices "a clear plastic bag under the passenger's seat containing a white, rock-like substance"); State v. Murray, 134 N.H. 613, 598 A.2d 206, 207 (1991) (immediately apparent to officers executing a search warrant for stolen property that "small clear plastic package, approximately one inch by one inch in size, containing white powder" was contraband); State v. Claytor, 85 Ohio App.3d 623, 620 N.E.2d 906, 907, 907-10 (1993) (officer *164 looking in car and observing "an open plastic baggie containing a white powder on the driver's seat" had probable cause to seize). We are thus satisfied that Officer Bento was able to see the substance, identify its contents as almost certainly contraband, and that this information established the requisite probable cause for arrest.
Furthermore, our de novo conclusion of probable cause to arrest is buttressed by evidence of defendant's demeanor and the location of the stop. The state points to the trial justice's finding that Flores appeared nervous during the traffic stop. Our review of the transcript establishes that defendant's hands were trembling, a characteristic of nervousness. Although standing alone a suspect's nervousness does not establish probable cause, "a police officer may consider the suspect's demeanor upon encountering the police, including any observed nervousness, as one factor within the officer's probable-cause calculus." Guzman, 752 A.2d at 4; see State v. Ramirez, 278 Kan. 402, 100 P.3d 94, 96-98 (2004) (observation that suspect appeared "fidgety and nervous" was properly considered as part of probable cause determination).
Lastly, we turn to the area in which the arrest occurred. We recognize that there was no testimony that this traffic stop occurred in an area known for criminal activity. See United States v. Stanfield, 109 F.3d 976, 978, 979 (4th Cir.1997) (noting traffic stop occurred in "a high crime area * * * known for its open narcotics trafficking" in reciting that officer had probable cause upon plain view of "a clear plastic bag of cocaine protruding from the mouth of a brown paper bag"). However, it is undisputed that during the course of his two and one-half years as a patrolman, Officer Bento had been assigned to the Olneyville section of Providence, in the area between Manton and Hartford Avenues, and had made hundreds of drug arrests, including arrest for the sale and distribution of narcotics in that area. We therefore are satisfied that although not explicitly established through testimony, Officer Bento was patrolling in an area in which drug offenses regularly occurred.[9]

IV

Conclusion
In the case before us, the testimony established that Officer Bento was an experienced law enforcement officer, trained to identify cocaine and how it commonly is packaged for sale. Indeed, he testified that clear plastic bags are generally used to package cocaine for sale and transportation. Based on this experience, it was apparent to him that two large clear plastic bags filled with white powder, located inside the center console of an automobile, "spoke volumes as to [their] contents." Brown, 460 U.S. at 743, 103 S.Ct. 1535. Accordingly, based on our de novo review of the record, under the totality of the circumstances, we are of the opinion that *165 this experienced police officer had the requisite probable cause to arrest defendant and seize the narcotics that he observed in plain view during a lawful automobile stop.
For the reasons set out above, the judgment of the Superior Court is reversed and the papers of the case are returned to the Superior Court.
Justice INDEGLIA took no part in the consideration or decision of this appeal.
NOTES
[1] Officer Bento's usual partner was on vacation; therefore, Officer Cornelia, who had approximately six months experience, was assigned as Officer Bento's partner for the week.
[2] The testimony established that, because this arrest occurred in late June, there was a significant amount of ambient light; presumably the flashlight was used to enhance Officer Bento's view inside the vehicle.
[3] Possession of an unsealed alcoholic beverage container while operating a motor vehicle is a violation under G.L.1956 § 31-22-21.1; G.L.1956 § 11-1-2.
[4] A criminal information subsequently charged defendant with one count of possession of an enumerated quantity of cocaine one ounce to one kilogramin violation of G.L.1956 § 21-28-2.08 and one count of possession of cocaine with intent to deliver, in violation of § 21-28-4.01(a)(4)(i). A search of Flores at the police station yielded approximately $1,400 in cash, mostly consisting of twenty, five, and one dollar bills.
[5] The trial justice was particularly troubled when, in response to questions from the court, Officer Bento testified that he believed a police officer would have probable cause to make an arrest if the trial justice himself were driving home with a plastic bag containing flour that was similarly packaged.
[6] Although the state prematurely filed its notice of appeal on September 23, 2008, we long have treated such an appeal as timely. See State v. Ros, 973 A.2d 1148, 1159 n. 14 (R.I.2009).
[7] The phrase "immediately apparent" is taken from Coolidge v. New Hampshire, 403 U.S. 443, 466, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). A plurality of the Court subsequently clarified in Texas v. Brown, 460 U.S. 730, 741, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983), that "the use of the phrase `immediately apparent' was very likely an unhappy choice of words, since it can be taken to imply that an unduly high degree of certainty as to the incriminatory character of evidence is necessary for an application of the `plain view' doctrine." See United States v. Hamie, 165 F.3d 80, 83 (1st Cir. 1999) ("immediately apparent" means "sufficient to constitute probable cause").
[8] See, e.g., United States v. Miller, 769 F.2d 554, 556, 557 (9th Cir. 1985) ("immediately apparent" that a clear plastic bag, partially wrapped in masking tape that fell out of a suitcase was contraband); Blackmon v. United States, 835 A.2d 1070, 1074 (D.C.2003) (immediately apparent that white rock-like substance on floor of passenger seat was crack cocaine); State v. Gordon, 646 So.2d 1005, 1010 (La.Ct.App.1994) ("immediately apparent" that cellophane baggie containing white powder within suspect's purse was contraband). Although in each of these cases, additional incriminating circumstances were present and contributed to the courts' determination of the existence of probable cause, these factors are not essential to the probable-cause determination and do not alter our conclusion. See, e.g., Miller, 769 F.2d at 557 (noting "the manner in which the plastic bag and suitcase were taped, and the presence of other similarly packaged bags in [suspect's] suitcase"); Blackmon, 835 A.2d at 1074 (tip about suspicious activities inside the vehicle); Gordon, 646 So.2d at 1010 (officer smelled burned marijuana).
[9] We also note that criminal cases emanating from this area of Providence are not infrequent occurrences before this Court or the Superior Court. See, e.g., State v. Momplaisir, 815 A.2d 65, 68 (R.I.2003) (drug conviction after the defendant was involved in the sale of crack cocaine to an undercover police officer in the Olneyville section of Providence); State v. Gomes, 764 A.2d 125, 129-30 (R.I.2001) (police correctly surmised that murder suspect would be found at a nearby store in Olneyville that recently had been robbed at gunpoint); State v. Gasparico, 694 A.2d 1204, 1205 (R.I.1997) (gang related shooting in Olneyville); State v. Gomes, 604 A.2d 1249, 1252 (R.I.1992) (random shooting at Olneyville restaurant).