State                              :

    v.                             :

Yara Chum.                         :

NOTICE:    This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State                             :

    v.                            :

Yara Chum.                        :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Goldberg, for the Court.**   This case came before the Supreme Court on September 25, 2012, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided.  The defendant, Yara Chum (Chum or defendant), appeals from a conviction of two felony counts of assault with a dangerous weapon and one count of discharging a firearm while committing a crime of violence.  The defendant was sentenced to concurrent terms of ten years imprisonment for each of the felony assault counts and a consecutive ten-year sentence on the firearm conviction, with five years to serve, five years suspended, with probation.  On appeal, the defendant attacks his conviction on two fronts.  First, relying on Wong Sun v. United States, 371 U.S. 471 (1963), he contends that his statement to police should have been suppressed as the tainted fruit of his unlawful arrest.  Second, the defendant argues that the trial justice deprived him of his right of confrontation by prohibiting defense counsel from cross-examining two police witnesses concerning his statements to police.  After reviewing the memoranda submitted by the parties and the arguments of counsel, we are satisfied that cause has not been shown, and the appeal may be decided at this time.  We affirm the judgment of conviction.

**Facts and Travel**

This case has its genesis in a drug deal gone awry. In the early morning of March 1, 2009, Frances Meseck, Jr. (Meseck)[1] agreed to sell to his soon-to-be ex-friend Matthew DePetrillo (DePetrillo) a quantity of marijuana. Meseck drove to the Chestnut Avenue area in Cranston, Rhode Island, to meet DePetrillo. Unexpectedly, however, DePetrillo was accompanied by another man, who was unknown to Meseck. Both men entered Meseck's car and, while DePetrillo and his friend examined the marijuana, Meseck drove around the block. When the would-be buyers indicated their willingness to make the purchase, Meseck pulled into a nearby driveway to consummate the deal. Before any money changed hands, however, DePetrillo's friend grabbed the marijuana, exited the car, and bolted down the street. DePetrillo informed a stunned Meseck that he had just been robbed. Meseck responded by driving after DePetrillo's companion, while DePetrillo jumped out of the moving vehicle.

Shortly after losing his merchandise, Meseck decided to even the score and enlisted the help of his friend, James Monteiro (Monteiro). The two men drove to 83 Chestnut Avenue in Cranston, where Erin Murray (Murray), a friend or associate of DePetrillo, resided. At that point, Meseck telephoned DePetrillo and told him that, if the marijuana was not returned or paid for within ten minutes, Meseck and Monteiro would smash the windows of Murray's house on 83 Chestnut Avenue. When DePetrillo refused to comply with Meseck's demands, Meseck and Monteiro made good on their threats—a tire iron and a brick crashed through the windows at 83 Chestnut Avenue.

At the time of these events, Meseck was living in a multifamily duplex at 33 Peach Avenue in Providence with Monteiro, James McArdle (McArdle), Lorenzo Saraceno (Saraceno),

---

[1] Meseck himself spelled his first name as "F-r-a-n-c-e-s."

and others. The dispute between Meseck and DePetrillo moved to Providence. When Meseck was visiting his parents' house in Scituate, Rhode Island, he received a call from DePetrillo, informing him that he was on his way to 33 Peach Avenue and looking for a fight. DePetrillo warned Meseck that he was "going to kick in [his] door with a .44 and shoot [him]." Meseck hastily returned to Providence and called Monteiro to warn the residents of 33 Peach Avenue of the impending threat.

Armed with this news, McArdle, Monteiro, and Saraceno positioned themselves on the front porch of 33 Peach Avenue, as two vehicles, a white Acura and a maroon-colored Acura, slowly passed the residence. McArdle recognized DePetrillo as the man in the white Acura who was pointing at the house. Within minutes, McArdle, Monteiro, and Saraceno watched as two Asian males approached the house. The record discloses that the taller of the two males later was identified by these witnesses as defendant. The other man was identified as Samnang Tep (Tep), who was named as a codefendant.

As the men drew near, defendant asked, "Which one of you broke my home girl's window?" When Monteiro replied that the absent Meseck was responsible, the men turned to leave. More words were exchanged between the two groups, however, and defendant eventually told Tep to shoot the men on the porch. Tep pulled out a gun and fired a single shot in the direction of the porch, hitting the porch railing.[2] After Tep fired, he and defendant ran away; McArdle called 911.

Cranston Police Department Patrolman Anthony Bucci (Ptlm. Bucci) was notified by dispatch that a shooting had occurred in Providence and that two suspect vehicles—a white

---

[2] Although the record discloses that McArdle was on the porch when defendant and Tep first approached 33 Peach Avenue, at the time of the shooting McArdle had retreated into his house and was standing at the bay window.

Acura and a red Acura—driven by Asian males had fled the scene. Patrolman Bucci was further informed that the vehicles might be traveling to the area of Magnolia Street and 83 Chestnut Avenue. After exchanging his marked police cruiser for an unmarked car, Ptlm. Bucci proceeded to the Chestnut Avenue area. Within minutes of his arrival, Ptlm. Bucci spotted a red Acura, driven by an Asian male, proceeding in the opposite direction. As Ptlm. Bucci turned his vehicle around, the Acura quickly turned off Chestnut Avenue without a turn signal being used; and the car temporarily disappeared from Ptlm. Bucci's view.

When Ptlm. Bucci next observed the Acura, it was parked at the side of Oakland Avenue, in the vicinity of Chestnut Avenue. As the passenger exited the vehicle, the driver moved into the passenger seat. Patrolman Bucci pulled behind the Acura, exited his vehicle, and approached the passenger, who was standing at the side of the road. Patrolman Bucci recognized this man as defendant. The defendant and Tep, the driver of the vehicle, were placed in custody.

Later that evening, Providence Police Detective Michael Otrando (Det. Otrando) interviewed defendant. The defendant was seated at a conference table without handcuffs or other restraints. Detective Ronald Riley, Jr. (Det. Riley) and Ptlm. Bucci also were present. After Det. Riley advised defendant of his Miranda rights, defendant acknowledged that he understood his rights and indicated so on the rights form. Detective Otrando informed defendant that he had been positively identified as having been involved in the shooting. The defendant agreed to make an oral statement and admitted his participation in the shooting.

A five-count criminal information subsequently was filed against defendant, Tep, and Murray.[3] The defendant filed a pretrial motion to suppress, contending that the statements "were

---

[3] The information charged defendant with two counts of felony assault with a dangerous weapon, one count of conspiracy to commit assault with a dangerous weapon, one count of carrying a firearm while committing a crime of violence, and one count of discharging a firearm while

- 4 -

procured in violation of rights secured to the defendant by Article I, Sections 10 and 13 of the Rhode Island Constitution and by the Fifth and Sixth Amendments to the United States Constitution, and in violation of the protections of <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966)." The trial justice, after an evidentiary hearing, denied the motion, finding by clear and convincing evidence that the statements were freely and voluntarily given and that defendant had been fully apprised of his <u>Miranda</u> rights.

Before opening statements, the trial justice gave the jury the following admonishment: "I tell you now, and I probably will remind you before this case is over, the statements of lawyers are not evidence. The only evidence you consider is that which comes in from the witness stand or any exhibits that may be marked as full exhibits." During his opening statement, the prosecutor referred to defendant's incriminating statement. Specifically, he told the jury:

> "I told you we'd prove this case with witnesses; we'd also prove it with the defendant's words himself, because, when the detectives came to the Cranston Police Department, they read him his rights and sat down and talked to him. And the defendant told them that he was contacted by Erin [Murray] and told that she needed him to take care of something; that she wanted them to take care of some kid named Frankie for smashing her windows; that he drove down to Peach Avenue with Matthew DePetrillo and Erin [Murray] so that they could point out the house; that he approached the house with a friend, Vang Chhit; that he approached some guys on the porch; that he ordered Chhit to shoot the guys; that Erin [Murray], Matthew DePetrillo and Samnang Tep were in a different car waiting around the corner; and that he and Chhit fled in separate

committing a crime of violence. After the close of the state's case at trial, the trial justice <u>sua sponte</u> entered a judgment of acquittal on the conspiracy count under Rule 29(a)(1) of the Superior Court Rules of Criminal Procedure. The state dismissed the count charging defendant with carrying a firearm while committing a crime of violence under Rule 48(a) of the Superior Court Rules of Criminal Procedure. The charges against Murray were dismissed on June 23, 2010.

cars, one red, and one white. You'll hear that. You'll hear about the defendant giving that statement to the Providence Police."[4]

Notwithstanding the prosecutor's promise to the jury, defendant's statement was not offered into evidence, and defendant failed to object to this circumstance by motion to pass the case or otherwise.

At trial, the state called Ptlm. Bucci in its case-in-chief. During direct examination, Ptlm. Bucci testified about the circumstances of defendant's arrest. On cross-examination, defense counsel asked Ptlm. Bucci if he knew when defendant had been advised of his <u>Miranda</u> warnings. The state objected, and the trial justice sustained the objection. Defense counsel then proceeded with cross-examination without protest.

The state also called Det. Otrando to discuss the photo arrays from which McArdle, Monteiro, and Saraceno identified defendant and Tep. On cross-examination, defense counsel asked Det. Otrando whether he had responded to the scene of the shooting. The state's objection to this question was sustained. Defense counsel then asked Det. Otrando, "When you arrived at 33 Peach [Avenue], you interviewed three individuals, correct?" The trial justice again sustained the state's objection. The following sidebar conversation then ensued:

> "THE COURT: Where are you going? This witness was offered for very close and discrete reasons; identification of photographs only. If you're thinking that you're going to inquire of him as to what your client said to him, I'm not going to permit it. Or, for that matter, any other witness that was interviewed by him. That's all hearsay. Not admissible through this witness. If you want your client's statement in front of this jury, the only way it's going to get there is if he gets on that stand.
>
> "[Defense counsel]: Okay. That's fine, Your Honor."

At that point, defense counsel had no further questions for Det. Otrando.

---

[4] Although the prosecutor stated that defendant's statement implicated Chhit as the shooter, the state's evidence at defendant's trial identified Tep as the shooter.

Before closing arguments, the trial justice reminded the jury once again that the statements and arguments of the lawyers were not evidence. The jury convicted defendant of two counts of felony assault with a dangerous weapon and one count of discharging a firearm while committing a crime of violence. On April 21, 2010, the trial justice denied defendant's motion for a new trial. He sentenced defendant to ten years imprisonment on each of the felony assault counts, to be served concurrently, and a consecutive ten-year sentence on the remaining firearms count, with five years to serve and five years suspended, with probation. The defendant appeals.

**Standard of Review**

When reviewing the grant or denial of a motion to suppress, we accord deference to the trial justice's factual findings and will disturb those findings only if they clearly are erroneous. State v. Taveras, 39 A.3d 638, 645-46 (R.I. 2012); State v. Flores, 996 A.2d 156, 160 (R.I. 2010). At the same time, however, this Court reviews "a trial justice's determination of the existence or nonexistence of probable cause or reasonable suspicion on a de novo basis." Taveras, 39 A.3d at 646 (quoting State v. Abdullah, 730 A.2d 1074, 1076 (R.I. 1999)); see Flores, 996 A.2d at 160.

We review a challenge to a trial justice's limitation on cross-examination under an abuse of discretion standard, and we will not disturb the exercise of that discretion absent a clear abuse of discretion. State v. Peoples, 996 A.2d 660, 664 (R.I. 2010); State v. McManus, 990 A.2d 1229, 1234 (R.I. 2010). To constitute a clear abuse of discretion, the trial justice's ruling excluding the evidence must amount to "prejudicial error." State v. Stansell, 909 A.2d 505, 510 (R.I. 2006) (quoting State v. Oliveira, 730 A.2d 20, 24 (R.I. 1999)).

**Analysis**

On appeal, defendant offers two reasons why his conviction should be overturned. First, defendant contends that the trial justice erred in denying his motion to suppress his statement because it was obtained as a result of an unlawful arrest. Second, defendant asserts that the trial justice violated his right of confrontation and right to a fair trial by restricting his counsel's cross-examination of Ptlm. Bucci and Det. Otrando. We reject these contentions.

**I**

**Motion to Suppress**

For the first time in these proceedings, defendant raises a Fourth Amendment challenge to the admissibility of his confession. He argues that there was no probable cause to support his arrest by Ptlm. Bucci and that the Miranda warnings did not attenuate the taint of this purported illegal arrest, thereby making his statement the fruit of Wong Sun's storied poisonous tree. See Wong Sun, 371 U.S. at 487-88. In addition to the fact that this argument is not properly before us, the statement was not introduced into evidence.

At no point during defendant's trial did the state introduce into evidence the statement he gave to the Providence police. Thus, the issue concerning the trial justice's denial of the motion to suppress—either on Fourth or Fifth Amendment grounds—is not a proper subject on appeal. See State v. Huy, 960 A.2d 550, 554 (R.I. 2008) ("For us to address Huy's contention that the contraband and confession were obtained illegally, the evidence must have been introduced at trial."); 29 Am. Jur. 2d Evidence § 3 at 37 (2008) ("Courts are to decide a case only on the evidence in that particular case. A matter which was not introduced or presented as evidence at trial does not come within the commonly accepted definition of 'evidence.' In this regard,

neither testimony nor physical objects are evidence unless they are produced, introduced, and received in a trial.").

Our conclusion squarely comports with the prophylactic purposes that underlie the exclusionary rule. See Huy, 960 A.2d at 556. As we explained in Huy, "if the alleged improperly obtained evidence has not been admitted at trial, there is nothing that the exclusionary rule can accomplish. In such a case, the deterrent function served by the exclusionary rule has no place." Id. So it is here.

To be sure, the prosecutor referred to defendant's statement in his opening statement to the jury. Although defendant desperately clings to this fact, it affords him no harbor because statements of counsel are not evidence. See State v. Tevay, 707 A.2d 700, 702 (R.I. 1998). The record discloses that the trial justice instructed the jury before the opening statements and again at closing arguments that statements of counsel were not evidence. It is well settled that this Court presumes that the jury follows a trial justice's adequate cautionary instruction. See State v. Dubois, 36 A.3d 191, 197 (R.I. 2012); State v. Lynch, 19 A.3d 51, 61 (R.I. 2011). The trial justice's instructions in this case plainly were adequate.

Furthermore, when, as in this case, a prosecutor makes an unfulfilled promise in opening statement about the evidence that will be put before the jury, a criminal defendant has several avenues available to address the issue. Defense counsel can remind the jury during closing argument that the prosecutor promised that certain evidence would be admitted and that the evidence never materialized. See State v. Perry, 779 A.2d 622, 626-27 (R.I. 2001) (holding that the trial justice erred in prohibiting defense counsel from arguing to the jury that the prosecutor promised in opening statement that a certain witness would be called to testify and that witness did not appear). Additionally, when it becomes clear that the prosecutor has suggested evidence

- 9 -

in the opening statement that was never adduced at trial, defense counsel can seek a mistrial or, in the alternative, a curative instruction. Id. at 628. In this case, defense counsel failed to use any of these mechanisms.

Moreover, defendant's contention that the trial justice erred in denying his motion to suppress suffers from yet another fatal flaw. In his motion to suppress, defendant asserted that his statements "were procured in violation of rights secured to the defendant by Article I, Sections 10 and 13 of the Rhode Island Constitution and by the Fifth and Sixth Amendments to the United States Constitution, and in violation of the protections of Miranda v. Arizona, 384 U.S. 436 (1966)." The defendant failed to cite either the Fourth Amendment to the United States Constitution or article 1, section 6 of the Rhode Island Constitution. Whether his arrest was lawful and based on probable cause, therefore, is not before us.

In State v. Brennan, 526 A.2d 483, 487 & n.1 (R.I. 1987), the defendant argued for the first time on appeal that his statements should have been suppressed because of his unlawful arrest. This Court deemed the issue waived. Id. at 487. Similarly, in State v. DeWitt, 423 A.2d 828, 829-30 (R.I. 1980), the defendant contended that his confession was the tainted fruit of his unlawful arrest. Before the hearing justice, however, the defendant had argued only that his statement should be excluded because it was coerced. Id. at 830. We therefore refused to consider his Fourth Amendment contentions on appeal because those arguments were not raised at trial. Id.

Notwithstanding defendant's failure to preserve this issue, our careful review of the record satisfies us that his contention is without merit. The test for probable cause is well established. It calls for

> "an objective assessment in which the examining court determines,
> under the totality of the circumstances, whether 'the facts and

> circumstances within * * * [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.'" Flores, 996 A.2d at 161 (quoting Maryland v. Pringle, 540 U.S. 366, 372 n.2 (2003)).

Under this standard, Ptlm. Bucci had ample probable cause to arrest defendant. He received a call from dispatch shortly after the shooting that a white Acura and a red Acura driven by Asian males had left the scene of the shooting and might be headed to the area of Magnolia Street and 83 Chestnut Avenue. Within minutes of his arrival, Ptlm. Bucci saw a red Acura driven by an Asian male. As he turned his vehicle around, the Acura turned and sped away. When Ptlm. Bucci next observed the vehicle, it was stopped on the street; the passenger, another Asian male, exited the vehicle as the driver transferred to the passenger side. To an experienced police officer, this is suspicious behavior. The totality of these circumstances, including Ptlm. Bucci's corroboration of several details of the police dispatch, coupled with the actions of the occupants of the Acura, warranted an officer of reasonable caution in the belief that an offense had been committed and that defendant was the one who committed it. See Flores, 996 A.2d at 161. Therefore, we are satisfied that Ptlm. Bucci had probable cause to arrest defendant.

## II

### Limitation on Cross-Examination

The defendant next argues that, by prohibiting his counsel from questioning Det. Otrando and Ptlm. Bucci concerning defendant's statement, the trial justice deprived him of his right to confront witnesses and denied him a fair trial. We discern no error.

A criminal defendant has a "well-established, constitutionally-protected right * * * to effective cross-examination of the prosecution's witnesses." Dubois, 36 A.3d at 198. This bedrock constitutional safeguard is embodied in the confrontation clauses of both the Sixth

Amendment to the United States Constitution and the Declaration of Rights of the Rhode Island Constitution, article 1, section 10. State v. Clark, 974 A.2d 558, 575 (R.I. 2009). Although the right to confront one's adverse witnesses may be vital, cross-examination is not unbounded. See Stansell, 909 A.2d at 510. "[T]rial justices are accorded wide discretion to curtail cross-examination after there has been 'sufficient cross-examination to satisfy the Sixth Amendment.'" Id. (quoting Oliveira, 730 A.2d at 24).

In this case, the trial justice precluded cross-examination of Det. Otrando concerning defendant's statement because it was inadmissible hearsay. Although defense counsel responded, "Okay. That's fine, Your Honor[,]" defendant takes a different tack in this Court. The defendant now argues that his statement was not hearsay, even if offered through police witnesses on cross-examination, because the statement was an admission of a party-opponent under Rule 801(d)(2)(A) of the Rhode Island Rules of Evidence. We disagree.

At the outset, we note that defendant has not properly preserved for our review any challenge to the trial justice's limitations on his cross-examination. In State v. Hazard, 785 A.2d 1111, 1115-16 (R.I. 2001), we explained:

> "When a trial justice sustains an objection to a line of inquiry on cross-examination and opposing counsel fails to make an offer of proof, fails to request any voir dire of the witness, and fails to articulate any reason why the court should reconsider its ruling, then that party cannot, on appeal, question the trial justice's ruling in sustaining the objection as reversible error."

Defense counsel in this case failed to comply with any one of these preservation mandates.

Nonetheless, the contention lacks merit. Rule 801(d)(2)(A) provides that "[a] statement is not hearsay if: * * * [t]he statement is offered against a party and is (A) the party's own statement, in either the party's individual or a representative capacity * * *." (Emphasis added.) Here, defendant's statement to police does not fall within Rule 801(d)(2)(A); while it was his

own statement, it was not offered against him. See State v. Harnois, 638 A.2d 532, 535 (R.I. 1994) (affirming trial justice's determination that the defendant's statements to police were not admissible under Rule 801(d)(2)(B) when the defendant sought to elicit statements from several police officers).

Moreover, the trial justice properly refused to permit cross-examination concerning defendant's statement because it was beyond the scope of the state's direct examinations of Det. Otrando and Ptlm. Bucci. Rule 611(b) of the Rhode Island Rules of Evidence provides that "[c]ross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. The court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination." In this case, Ptlm. Bucci testified on direct examination about the circumstances of defendant's arrest. Detective Otrando was, in the trial justice's words, "offered for very close and discrete reasons; identification of photographs only." Therefore, defendant's statement to police was outside the scope of the direct examinations of both of these police witnesses.

Indeed, defendant concedes that both attempted inquiries were beyond the scope of direct examination; but he contends, nevertheless, that the trial justice abused his discretion under Rule 611(b). First, defendant asserts that the evidence may have led to further evidence concerning whether the statement was voluntary under Rhode Island's Humane Practice Rule. See State v. Tassone, 749 A.2d 1112, 1117-18 & n.7 (R.I. 2000) (outlining contours of Humane Practice Rule). Second, defendant argues that, if his statement had been admitted, he would have been able to point out the inconsistencies between that statement and trial evidence.[5] Both of these arguments are unavailing: the statement was not introduced into evidence, and a defendant in a

[5] Specifically, defendant attaches significance to the fact that his statement identified Vang Chhit, and not Tep, as the shooter.

- 13 -

criminal case is not entitled to have his version of events introduced through the testimony of other witnesses.

In Harnois, a case in which the defendant was unable to elicit his out-of-court statements through the police witnesses, we explained that:

> "The defendant did not take the stand at trial. He may not testify by other means, including by way of the unsworn statements made to police. * * * By choosing to exercise his Fifth Amendment right, defendant waived all rights to testify. * * * The defendant was seeking to offer testimony through his statements, which might raise reasonable doubt in the minds of a jury, yet would deprive the state of the opportunity of cross-examination. The rules of evidence will not be manipulated in this way." Harnois, 638 A.2d at 535-36.

This Court has reaffirmed Harnois on several occasions. See, e.g., State v. Lomba, 37 A.3d 615, 622 (R.I. 2012) ("As was his absolute right, defendant chose not to take the stand at trial, but after having made that decision, '[h]e may not testify by other means, including by way of the unsworn statements made to police.'" quoting Harnois, 638 A.2d at 535-36); Hazard, 785 A.2d at 1119; see also State v. Bustamante, 756 A.2d 758, 763-64 (R.I. 2000) (affirming the trial justice's refusal to allow the defendant to elicit his statements through the testimony of a police officer because it "would permit defendant to introduce his own statements into evidence without taking the stand, thus depriving the prosecutor of the opportunity to cross-examine the proponent of those statements, defendant himself").

Therefore, we are satisfied that the trial justice properly precluded the defendant from eliciting his statement to police during the cross-examination of Det. Otrando and Ptlm. Bucci.

## Conclusion

For the reasons articulated above, we affirm the judgment of conviction. The papers may be remanded to the Superior Court.

- 14 -



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**         State v. Yara Chum.

**CASE NO:**               No. 2011-254-C.A.
                           (P2/09-3192BG)

**COURT:**                 Supreme Court

**DATE OPINION FILED:**    October 25, 2012

**JUSTICES:**              Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia JJ.

**WRITTEN BY:**            Associate Justice Maureen McKenna Goldberg

**SOURCE OF APPEAL:**      Providence County Superior Court

**JUDGE FROM LOWER COURT**:

                           Associate Justice Robert D. Krause

**ATTORNEYS ON APPEAL:**

                           For State:   Lauren S. Zurier
                                          Department of Attorney General

                           For Defendant:  Katherine C. Essington, Esq.